INEZ OSORIO,

      Petitioner,

      v.

WILLIAM ANDERSON and THE ATTORNEY
GENERAL OF THE STATE OF NEW JERSEY,

      Respondents.

Civ. No. 17-1536 (KM)

**OPINION**

## KEVIN MCNULTY, U.S.D.J.

### I.    INTRODUCTION

The petitioner, Inez Osorio, is a state prisoner proceeding *pro se* with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE 1.) Ms. Osorio is currently confined at Edna Mahan Correctional Facility in Clinton, New Jersey. For the following reasons, Ms. Osorio's petition is denied and a certificate of appealability shall not issue.

### II.    BACKGROUND

#### A.  Factual Background

In the early morning hours of July 19, 1996, Ms. Osorio was with co-defendants Anthony Lopez ("Lopez") and Oscar Henry ("Henry") in Brooklyn, New York. (DE 5-11, at 34.) Henry testified at trial that Lopez asked Henry to accompany him and Ms. Osorio to New Jersey that morning and told him to bring his gun along. (*Id.* at 34-35.) Henry agreed, and before leaving New York he gave his gun to Lopez. (*Id.* at 36-41.) The three traveled to a lace cutting factory in Fairview, New Jersey owned by Louis Lodato. (*Id.* at 36-38.) At some point that morning, Henry learned that Ms. Osorio had a problem with Lodato and wanted to "kidnap him and take him

prisoner." (*Id*. at 58.) Henry also overheard Ms. Osorio state that Lodato had previously fired her. (*Id*. at 94.)

After Lodato arrived at the factory, Henry saw Lopez approach Lodato's vehicle three times in the parking lot. (*Id*. at 90.) Henry testified that on the third occasion, both Lopez and Ms. Osorio approached the driver's side window. (*Id*. at 90-91.) Henry saw Lopez take the gun out of his waistband and hand it to Ms. Osorio. (*Id*. at 90-91.) Henry stated that Lopez then entered the driver's side of the vehicle while Ms. Osorio entered the back seat. (*Id*. at 43-44.) Henry testified that a few second later, he saw Lodato open the passenger side door and attempt to get out of the vehicle. (*Id*. at 44.) Henry saw Ms. Osorio grab Lodato from behind to keep him inside the vehicle. (*Id*.) However, Lodato was able to break free and escape. (*Id*.) Lopez then drove the vehicle out of the parking lot, stopping to pick up Henry before driving away from the scene. (*Id*. at 45.) Henry testified that when he entered the vehicle, Ms. Osorio was holding the gun. (*Id*. at 99.) As they drove away, Ms. Osorio put the gun in Henry's bookbag. (*Id*.) They drove for a few blocks before abandoning the car and separating. (*Id*. at 45-46.)

Lodato also testified at trial. (DE 5-10.) He stated that when he arrived at the factory, he remained in his vehicle to drink his coffee and smoke a cigarette before going into work. (DE 5-10, at 44.) While Lodato was in his vehicle, a "Spanish looking man," later identified as Lopez, approached and asked for a match. (*Id*. at 45.) Lodato handed Lopez a match and Lopez walked away. (*Id*.) A few minutes later, Lopez returned and asked Lodato if "anybody was looking to hire in that neighborhood." (*Id*.) The two men had a brief conversation, after which Lopez again walked away. (*Id*. at 45-46.) Lodato testified that, a few minutes later, Lopez returned yet again, but this time he put a gun to Lodato's head through the open driver's side window and told Lodato to move over. (*Id*. at 46.) Lodato simultaneously heard another individual enter the back

2

seat of his vehicle. (*Id.*) Lodato testified that he moved to the passenger side and tried to open the door. (*Id.*) However, as he was trying to exit, the individual in the back seat grabbed his neck from behind and tried to hold him in the vehicle. (*Id.* at 47.) Lodato testified that Lopez moved into the driver's seat and held a gun to his back. (*Id.*) Lodato stated, "Go ahead, shoot me. But I'm not going with you." He then proceeded to break free and escape the vehicle. (*Id.* at 47-48.) The vehicle drove away and Lodato ran inside the factory to call the police. (*Id.* at 48.)

Shortly thereafter, Henry was arrested. (DE 5-11, at 47.) He cooperated with law enforcement and identified Lopez and Ms. Osorio as the other individuals involved in the crime. (*Id.* at 51.) Lodato later recognized Ms. Osorio from a photo array as an individual he knew, but he was unable to state whether she had been involved in the crime. (DE 5-10, at 50-51.) A factory employee told police that she had seen three suspicious people in front of the factory when she arrived for work that morning. (*Id.* at 77-78.) The employee identified Ms. Osorio from a photo array as one of those suspicious individuals. (*Id.* at 79.)

## B. Procedural History

In September 1997, Ms. Osorio was tried before the Honorable Elijah L. Miller, J.S.C., and a jury. (DE 5-9.) During trial, Ms. Osorio, who was free on bail, absconded. (DE 5-14, at 2.) On September 24, 1997, she was found guilty *in absentia*[1] of the following charges: Count I, first-degree carjacking, contrary to N.J. Stat. Ann. § 2C:15-2A(1); Count II, second-degree attempted kidnapping, contrary to N.J. Stat. Ann. § 2C:13-1b; Count III, first-degree robbery, contrary to N.J. Stat. Ann. § 2C:15-1; Count IV, fourth-degree aggravated assault with a firearm, contrary to N.J.

---

[1]  Under New Jersey law, there can be a trial *in absentia* where the defendant absconds after being informed of the trial court date, including before the trial even commences. *See State v. Finklea*, 686 A.2d 322, 326-27 (N.J. 1996); *see also State v. Canty*, 650 A.2d 391, 392 (N.J. Super. Ct. App. Div. 1994) ("Under circumstances demonstrating adequate notice, a court may proceed with a motion to suppress and a trial even in the defendant's absence.")

3

Stat. Ann. § 2C:12-1B(4); Count V, second-degree possession of a weapon for an unlawful purpose, contrary to N.J. Stat. Ann. § 2C:39-4A(1); and Count VI, third-degree unlawful possession of a weapon, contrary to N.J. Stat. Ann. § 2C:39-5b. (DE 5-13, at 55-56; DE 5-1.)

Over ten years later, Ms. Osorio was arrested in Florida. (DE 5-14, at 2.) She was returned to New Jersey and sentenced on January 18, 2011. (*Id.*) The Honorable Patrick J. Roma, J.S.C., imposed the following sentence: a twenty-year term with a ten-year parole disqualifier on Count III; a concurrent eighteen-year term with a nine-year parole disqualifier on Count I; a concurrent ten-year term with a five-year parole disqualifier on Count II[2]; a concurrent eighteen-month term on Count IV; and a concurrent five-year term on Count VI. (*Id.* at 11.)

After Ms. Osorio was sentenced, she contacted her trial counsel and requested that he file an appeal. (DE 5-2, at 68.) Ms. Osorio's trial counsel responded that he would not represent her without receiving a legal fee and that she was "not in any position to pay for private legal services at this time." (*Id.* at 69.) However, counsel informed Ms. Osorio that she could contact the Office of the Public Defender and receive free legal services. (*Id.*) Ms. Osorio did not contact the Office of the Public Defender, and no direct appeal was filed. *See State v. Osorio*, No. A-4615-13T1, 2016 WL 4527593, at *2 (N.J. Super. Ct. App. Div. Aug. 30, 2016).

On March 2, 2012, Ms. Osorio filed a petition for post-conviction relief ("PCR"). (DE 5-2, at 70.) Following oral argument, Judge Roma denied the petition in a written opinion. (*Id.* at 139-45; DE 5-15.) On August 30, 2016, the Appellate Division affirmed that denial of PCR. *See Osorio*, 2016 WL 4527593, at *4. The New Jersey Supreme Court denied Ms. Osorio's petition for certification. *See State v. Osorio*, 156 A. 3d 177 (N.J. 20`6.)

On February 23, 2017, Ms. Osorio filed this § 2254 habeas petition. (DE 1.) She raises

---

[2] Count V was merged into Count II for sentencing purposes. (*Id.*)

4

claims of insufficient evidence, prosecutorial misconduct, improper jury instruction, ineffective assistance of counsel, and cumulative error. (*Id.* at 6-12.) On April 27, 2017, the State filed a response in opposition. (DE 5.) The petition is now ripe for disposition.

## III. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that [s]he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing her entitlement to relief for each claim presented in her petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is "clearly established" for these purposes where it is clearly expressed in "the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they

were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). "[W]hen the relevant state-court decision on the merits ...does not come accompanied with ... reasons ... [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). These principles of deference apply, however, "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011). In such a case, the petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* at 187-88 (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)).

There is an additional prerequisite to habeas relief. A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can still deny them on the merits under 28 U.S.C.

§ 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)); *see also Gray v. Netherland*, 518 U.S. 152 (1996); *Coleman v. Thompson*, 501 U.S. 722 (1991) ).

If a federal court determines that a claim has been procedurally defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)). However, a court may also elect to deny procedurally defaulted claims on their merits under 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728. Claims not adjudicated on their merits in state court proceedings receive a de novo standard of review. *See Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009).

## IV. DISCUSSION

### A. Insufficient Evidence

In her first ground for relief, Ms. Osorio asserts that there was a "gross insufficiency" of evidence in her case, resulting in a violation of her due process rights. (DE 1, at 6.) Specifically, Ms. Osorio contends that the State's evidence was based upon the "uncorroborated testimony" of Henry, which was "so suspect that the State failed to meet its burden of proving [Ms. Osorio] guilty beyond a reasonable doubt." (*Id.*)

Ms. Osorio raised this argument during her PCR proceedings. (DE 5-2, at 73, 76, 84-89, 141-42.) In denying the claim, the PCR court first found that it was procedurally defaulted, because it should have been raised on direct appeal. (DE 5-2, at 141-42.) The PCR court reasoned in the alternative, however, that the argument lacked merit because there was "ample evidence for a jury to return a verdict of guilty as to each count." (*Id.* at 142.) In affirming the denial of PCR, the Appellate Division summarily concluded that this claim was "without sufficient merit to warrant discussion in a written opinion." *Osorio*, 2016 WL 4527593 at *4.

The Due Process Clause of the Fourteenth Amendment guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The reviewing court must give due regard to the factfinder's ability to view the evidence, resolve conflicts, and draw reasonable inferences from the evidence. *See Jackson*, 443 U.S. at 319. As a result, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup*, 513 U.S. at 330. If a record would support conflicting inferences, courts "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

Here, as the PCR court stated, there was "ample evidence" for a jury to find Ms. Osorio guilty of the counts charged. Henry testified that Ms. Osorio, for reasons of revenge, wanted to

take Mr. Lodato prisoner; that she entered Lodato's vehicle with Lopez; that she grabbed Mr. Lodato by the neck in an attempt to prevent him from escaping; that she had possession of the gun at or about the time of the intended carjacking; and that she fled from the scene in Lodato's vehicle. Henry's testimony, if credited, sufficed to support the following offenses: carjacking by infliction of bodily injury on Lodato while she was trying to unlawfully take his vehicle, contrary to N.J. Stat. Ann. § 2C:15-2(A); first degree armed robbery by putting Lodato in fear of immediate bodily injury while Ms. Osorio was armed with, or threatening the immediate use of, a gun, contrary to N.J. Stat. Ann. § 2C:15-1; attempted kidnapping by taking a substantial step toward confining Lodato against his will for a substantial period of time, contrary to N.J. Stat. Ann. § 2C:13-1b; and possession of a gun without a permit for the purpose of unlawfully using it against Lodato, contrary to N.J. Stat. Ann. §§ 2C:39-4A and 2C:39-5B.

In addition, there was corroboration. Lodato apparently could not see Osorio, who was behind him, but his testimony interlocked factually with Henry's account. Another eyewitness, a factory employee, placed Ms. Osorio at the scene of the crime at the relevant time.

Based upon this record, and viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 442 U.S. at 319. Accordingly, Ms. Osorio is not entitled to habeas relief on this ground.

### B. Prosecutorial Misconduct

In her second ground for relief, Ms. Osorio alleges that her "fundamental right to have the jury fairly evaluate the evidence was severely prejudiced by comments made in the prosecutor's summation." (DE 1, at 7.) Specifically, she cites the prosecutor's statement that it was the jury's "duty" to examine the evidence and testimony "until they were satisfied that they

could make a decision beyond a reasonable doubt as to [Ms. Osorio's] guilt or innocence." This, she says, was a misstatement of the law in that it improperly shifted the burden of proof to her to prove her innocence. (*Id.*)

When Ms. Osorio raised this claim during her PCR proceedings, the PCR court first denied it as procedurally defaulted because it should have been raised on direct appeal. (DE 5-2, at 144.) However, the PCR court also reasoned in the alternative that the claim was substantively "without merit." (*Id.* at 142.) The Appellate Division summarily rejected this claim, finding that it was "without sufficient merit to warrant discussion in a written opinion." *See Osorio*, 2016 WL 4527593, at *4.

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 182–83 (1986). A habeas petitioner challenging a prosecutor's trial summation will not succeed merely because the prosecutor's actions were undesirable or even universally condemned. *See id.* at 181. Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation marks and citation omitted). A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Upon examination of the record as a whole, I am unable to discern any significant legal error in the prosecutor's statement. *A fortiori*, I find that the prosecutor's comment did not so

infect the trial with unfairness as to make the resulting conviction a denial of due process. *See*

*Darden*, 477 U.S. at 181.

I also consider the statement to which Ms. Osorio objects in context. During closing

arguments, the prosecutor stated, in pertinent part, the following:

> This case [is] not about me or anything that I say. This case is not
> about Mr. Kittner or anything that he says. And with all due
> respect to the Judge, even the Judge can't tell you what the facts
> are in the case. You decide it based upon the people that got on the
> stand. That's the only place the evidence can come from.
>
> . . .
>
> You have to look at all of the evidence. That's what you're here
> for. It's your duty to say, look at all the testimony that came out
> and all of the evidence that was presented and until you're satisfied
> that you can make a decision beyond a reasonable doubt as to the
> guilt or innocence of Inez Osorio.
>
> . . .
>
> I would love to be able to present to you a videotape from a
> telephone pole on Industrial Avenue that shows everything clearly
> and this is what happened, but that's not going to happen. It's
> unrealistic. You have to look at the evidence that was presented to
> you and decide for yourself did I prove the case.
>
> . . .
>
> One last thing that isn't a part of those three things I wanted to talk
> about is the charges you're going to have. It's a very difficult
> process. The Judge is going to explain to you tomorrow, since it's
> going to take him at least an hour to go over the law with you and
> it's a lot of very legal stuff that I wouldn't begin to try to explain to
> you. That's why the Judge is the Judge. He is the -- not only the
> final word, but the best informed out of all of us.
>
> And he's going to tell you exactly what the law is that you have to
> follow. And you're going to be given certain legal principles that
> you already heard, as I have to prove my case beyond a reasonable
> doubt. The defendant is always presumed innocent until proven
> guilty.

> But you're going to hear about the -- and the burden of proof is
> always on the State.

(DE 5-12, at 96-111.) The prosecutor then proceeded to explain each of the charges and

suggested how the evidence presented at trial had proven Ms. Osorio guilty of each. (*Id.* at 111-

113.)

Particularly within this context, it is clear that the prosecutor did not misstate the law or

mislead the jury into thinking that the burden of proof fell upon Ms. Osorio to prove her

innocence. Indeed, the prosecutor emphasized multiple times that it was his burden of proof to

show that Ms. Osorio was guilty beyond a reasonable doubt. The prosecutor highlighted the

principle that a criminal defendant is presumed innocent until proven guilty. (*Id.* at 111.)

I also find that the trial judge's instructions nullified any arguable error in the summation.

The trial judge scrupulously instructed the jury as to the prosecution's burden and the

presumption of innocence, stating as follows:

> A defendant on trial is presumed to be innocent. Unless each and
> every essential element of an offense is char -- as charged is
> proven beyond a reasonable doubt, the defendant must be found
> not guilty of that charge or those charges.
>
> The burden of proving each element of a charge beyond a
> reasonable doubt rests upon the State and that burden never shifts
> to the defendant. The defendant in a criminal case has no
> obligation nor duty to prove her innocence or to offer any proof
> relating to her innocence. The State has the burden of proven the
> defendant guilty beyond a reasonable doubt.

(DE 5-13, at 10-11.) Those instructions were accurate and forceful, and "[a] jury is presumed to

follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 733 (2000)

(quoting *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702 (1987)).

The jury in Ms. Osorio's case was clearly not misled by the prosecutor's remarks. I see

no indication of confusion as to the burden of proof, but even if there had been, the trial court

12

court's accurate instructions would have cleared it up. Therefore, Ms. Osorio has not demonstrated that the prosecutor's remarks had a substantial and injurious effect on the jury's verdict. Ms. Osorio is not entitled to habeas relief on this ground.

## C. Improper Jury Instruction

In her third ground for relief, Ms. Osorio again cites the prosecutor's remarks, discussed in Section IV.B, immediately preceding. Conceding that her counsel did not object at the time, she nevertheless alleges that she was denied due process because the trial court failed to issue a curative instruction correcting the prosecution's "misstatement of law" as to the burden of proof (DE 1, at 9.) The trial court, she says, should have *sua sponte* instructed the jury that "the State bears the sole burden of proving the defendant guilty of every element necessary to constitute the crime charged beyond a reasonable doubt." (*Id.*)

Ms. Osorio raised this claim during her PCR proceedings. (DE 5-2, at 105.) The trial court only briefly addressed this argument in its written opinion, stating that this issue should have been raised on direct appeal and that the prosecutor's remarks during summation were in any event "harmless." (*Id.* at 143-44.) On appeal from the denial of PCR, the Appellate Division held that this claim was "without sufficient merit to warrant discussion in a written opinion." *See Osorio*, 2016 WL 4527593, at *4.

"Habeas relief for a due process violation concerning an absent or defective instruction is available when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). In criminal cases, a defendant is presumed innocent and the burden of proof is always on the State to prove the defendant guilty beyond a reasonable doubt "of every fact necessary to constitute the crime with which he is charged." *See In re Winship*, 397 U.S.

13

358, 363-64 (1970). A jury instruction which "reduce[s] the level of proof necessary for the Government to carry its burden ... is plainly inconsistent with the rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972). If a court's "erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law," then the Due Process Clause has been violated. *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997); *see also In re Winship*, 397 U.S. at 364.

There are two glaring problems with Ms. Osorio's argument here. The first is with the premise: *i.e.,* that the prosecutor's remarks misstated the law or had a prejudicial effect on the verdict. I have already held that they did not, so a "curative" instruction was not required. *See* Section IV.B, *supra*. The second is with the complaint that the trial court failed to instruct the jury regarding the State's burden of proof and the presumption of innocence. The record demonstrates that the trial court *did*, in fact, properly instruct the jury as to those very legal principles. (DE 5-13, at 10-11.) The trial court expressly informed the jury that Ms. Osorio was presumed innocent, that it was the State's burden to prove her guilty, and that it was not Ms. Osorio's burden to prove her innocence. (*Id.*) Absent any showing to the contrary, the jury is presumed to have followed those instructions. *See Weeks*, 528 U.S. at 234.

Ms. Osorio is not entitled to habeas relief on this ground.

## D. Ineffective Assistance of Counsel

In her fourth ground for relief, Ms. Osorio raises several claims of ineffective assistance of trial counsel. (DE 1, at 10.) She asserts that her trial counsel was ineffective for failing to object to the prosecutor's improper comment about the burden of proof; failing to request a curative instruction from the trial court regarding the prosecutor's comment; failing to file a

14

motion for a judgment of acquittal or for a new trial; and failing to make a sufficiently "strong and forceful argument for a lesser sentence and mitigating circumstances." (*Id.*)

Under the Sixth Amendment, a defendant is guaranteed the right to effective assistance of counsel during critical portions of a criminal proceeding. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-prong test for demonstrating ineffective assistance of counsel. To succeed on an ineffective assistance claim, a petitioner must show: (1) that, considering all relevant circumstances, counsel's performance fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result. *See id.* at 687–96; *see also Grant v. Lockett,* 709 F.3d 224, 232 (3d Cir. 2013).

In addressing the first prong, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel's strategic choices made after thorough investigation of the relevant law and facts are "virtually unchallengeable," while choices made with less than entirely thorough investigation "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006); *Gov't of V.I. v. Weatherwax,* 77 F.3d 1425, 1432 (3d Cir. 1996). Whether counsel acted in a manner that was deficient is measured by a standard of "reasonableness

under prevailing professional norms." *Strickland*, 466 U.S. at 687–88; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove resulting prejudice. *See Strickland*, 466 U.S at 693. Prejudice is generally found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale,* 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 111–12 (2011) (internal quotation marks and citation omitted).

*Strickland* made it clear that a court may apply the two prongs in whichever order it sees fit. *See Strickland,* 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *see also Rainey v. Varner,* 603 F.3d 189, 201 (3d Cir. 2010).

### i.    Failure to Object to Prosecutor's Misstatement of the Law and to Request a Curative Instruction

Ms. Osorio argues that her trial counsel should have objected to the prosecutor's alleged misstatement of the law regarding the burden of proof and requested that the trial court issue a curative instruction. (DE 1, at 10.) The Appellate Division denied both of these claims during Ms. Osorio's PCR proceedings. *See Osorio,* 2016 WL 4527593, at *3-4. Regarding trial

16

counsel's failure to object to the prosecutor's remark, the Appellate Division held, in pertinent

part:

> Defendant contends her counsel was ineffective by not objecting to
> this remark. Certainly, it is not the province of the jury to decide if
> a defendant is innocent but only to determine whether the State has
> met its burden with regard to guilt. Later in his summation, the
> prosecutor did state, "I have to prove my case beyond a reasonable
> doubt. The defendant is always presumed innocent until proven
> guilty." Further, the trial judge charged the jury that they must
> accept and apply the law as he gives it to them. The jury was
> appropriately charged on the presumption of innocence and the
> State's burden of proving each element of the crime. Therefore, we
> agree with the judge that defendant's counsel was not
> constitutionally ineffective by failing to object to the prosecutor's
> remark in summation.

*Id.* at \*4. As to Ms. Osorio's claim that trial counsel was ineffective for failing to request a

curative instruction, the Appellate Division held that it was "without sufficient merit to warrant

discussion in a written opinion." *Id.*

These two claims, of course, are simply restatements of those already discussed above,

*see* Sections IV.B & C, refashioned as claims that counsel was ineffective for having permitted

these errors to occur. I have already held that the prosecutor's comments were not improper and

did not prejudice the verdict. The prosecutor explicitly informed the jury that Ms. Ososio was

innocent until proven guilty and that it was the State's responsibility to prove Ms. Osorio guilty

beyond a reasonable doubt. (DE 5-12, at 111.) Moreover, if there had been any confusion as to

the burden of proof, the trial court did explicitly instruct the jury that Ms. Osorio was presumed

innocent, that was is not her burden to prove her innocence, and that the burden of proof always

remains with the State. (DE 5-13, at 10-11.) *See* Sections IV.B & C, *supra*.

Accordingly, Ms. Osorio is unable to demonstrate that her trial counsel was deficient for

not objecting to the prosecutor's comment and not requesting a "curative" instruction. The state

courts' adjudication of these claims was contrary to or an unreasonable application of *Strickland*. Ms. Osorio is not entitled to habeas relief on these claims.

### ii. Failure to File a Motion for a Judgment of Acquittal or a New Trial

Ms. Osorio also argues that her trial counsel was ineffective because he failed to file a motion for a judgment of acquittal or a motion for a new trial after she was found guilty. (DE 1, at 10.) She provides no further detail or argument. (*Id.*) When she raised this claim during her PCR proceedings, she more specifically argued that trial counsel should have filed a motion for a judgment of acquittal or for a new trial because there had been insufficient evidence presented at trial to support her convictions. (DE 5-2, at 87, 125.) I will assume that she intends to make the same argument here.

The PCR court did not explicitly address this claim in its written decision. (DE 5-2, at 139-45.) However, in denying all of Ms. Osorio's ineffective assistance of counsel claims, the PCR court stated that Ms. Osorio's trial counsel "represented his client's interests zealously" and that Ms. Osorio was unable to meet the prejudice prong of *Strickland* on any of her ineffective assistance claims. (DE 5-2, at 144.)

Even more fundamentally, the PCR Court vitiated the main premise of this claim—*i.e.,* that the evidence was not sufficient. The PCR court stated that, "a review of the trial transcripts shows that there was ample evidence for a jury to return a verdict of guilty as to each count." (DE 5-2, at 142.) On appeal from the PCR court's denial, the Appellate Division summarily dismissed this claim, finding that it was "without sufficient merit to warrant discussion in a written opinion." *See generally Osorio*, 2016 WL 4527593, at *1-4. And I have now held that the evidence was sufficient. *See* Section I.A, *supra*. It follows that trial counsel's failure to make the same argument cannot satisfy the deficient-performance prong or, especially, the prejudice prong

of *Strickland*. Because the argument could not succeed, failing to raise it cannot have constituted ineffective assistance of counsel.

As discussed previously, there was sufficient evidence to convict Ms. Osorio of the counts charged in the indictment. *See State v. Spruiel*, No. A-2232-172, 2019 WL 5783538, at \*5 (N.J. Super. Ct. App. Div. Nov. 6, 2019) ("The long-established standard to determine a motion for a judgment of acquittal at the conclusion of the State's case: '[W]hether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt'") (internal citation omitted). A review of the record demonstrates that Ms. Osorio "wanted revenge on the victim, Louis Lodato, for firing [her] from her job" and that "at the moment of the intended carjacking, [she] was the actor who was holding the loaded gun. (DE 5-2, at 142.) Additionally, the evidence demonstrated that after Lodato escaped the vehicle, Ms. Osorio, along with her co-defendants, fled the scene in Lodato's vehicle. (*Id.*) Based upon this record, Ms. Osorio has not demonstrated, nor has she even argued in this petition, that if trial counsel had raised a motion for a judgment of acquittal or for a new trial it would have been granted. Trial counsel cannot be deemed ineffective for failing to raise a meritless motion. *See Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).[3]

---

[3]     A hypothetical but equally meritless motion for a new trial based on insufficient evidence would have been governed by a slightly different standard:

Rule 3:20. New Trial

3:20-1. Trial by Court or Jury

The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. If trial was by the judge without a jury, the judge may, on defendant's motion for a new trial, vacate the judgment if entered, take additional

19

Accordingly, the state courts' adjudication of this claim was not contrary to or an unreasonable application of *Strickland*. Ms. Osorio is not entitled to habeas relief on this claim.

    *iii.*     *Failure to "Make a Strong and Forceful Argument for a Lesser Sentence and Mitigating Circumstances"*

Ms. Osorio also submits that trial counsel was "ineffective during the sentencing proceeding by failing to make a strong and forceful argument for a lesser sentence and mitigating circumstances." (DE 1, at 10.) Again, she provides no additional information or argumentation in support of the claim. (*Id.*) When she raised this argument during her PCR proceedings, however, she more specifically alleged that trial counsel had been ineffective for not demonstrating "the inapplicability of all but one of the aggravating [sentencing] factors found by the trial court to exist" and for not emphasizing "the existence of several mitigating [sentencing] factors on his client's behalf." (DE 5-2, at 37.) I will again assume that Ms. Osorio means to make a similar argument here.

The PCR court denied this claim, finding that Ms. Osorio was unable to prove the prejudice prong of *Strickland*. (*Id.* at 144.) The PCR court found that "the aggravating factors applied at sentencing were more than appropriate" and that there was "no error" in the trial

---

testimony and direct the entry of a new judgment. The trial judge shall not, however, set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

N.J. Ct. R. 3:20-1. *See also State v. C.E.L.*, No. A-5783-13T1, 2018 WL 4167729, at \*29 (N.J. Super. Ct. App. Div. Aug. 31, 2018) ("There is no manifest denial of justice if the jury could have found defendant's guilt beyond a reasonable doubt.") (citing *State v. Jackson*, 48 A.3d 1059, 1071 (N.J. 2012)).

On review of the record, I must find that a motion for a new trial would not have been appropriate, either on grounds of insufficient evidence or claims of trial error, for the same reasons discussed above. I note parenthetically that Ms. Osorio was a fugitive at the time. There is no clear holding that the fugitive disentitlement doctrine, a rule primarily directed to appeals, would have been properly applied here. Nevertheless, Ms. Osorio's belated insistence that she (or her empty chair) should have been retried rings rather hollow, and such an outcome suggests some perverse incentives for fugitives.

20

court's decision not to consider all of the mitigating factors. (*Id.* at 143.) The Appellate Division summarily denied the claim, finding that it lacked sufficient merit to warrant discussion. *See Osorio*, 2016 WL 4527593, at \*4.

Here, I find that the state courts' adjudication of this claim was not contrary to or an unreasonable application of *Strickland*. At sentencing, Ms. Osorio's trial counsel did make reasonable arguments, keyed to the relevant statutory factors, for leniency at sentencing. (DE 5-14, at 2-4.) Trial counsel argued, in pertinent part, as follows:

> I think that whatever sentence Your Honor imposes should take into account the nature of Ms. Osorio's medical, psychological, psychiatric, and emotional disabilities, and I would ask Your Honor to fashion a sentence which will serve the public by imposing a period of incarceration based on the nature of the charges but also take into account that Ms. Osorio is no longer in a position to commit crimes.
>
> The circumstances under which this offense was committed will never occur again. Ms. Osorio is not capable of committing such an act any longer in her life … [A]nd I don't think that Your Honor should impose that great of a sentence. I think a 10-year period of incarceration with some period of parole disqualification is more appropriate at this point in time for this particular defendant.[4]

(*Id.* at 4.)

The sentencing transcript clearly reflects that trial counsel argued for the application of mitigating factor eight – that "[t]he defendant's conduct was the result of circumstances unlikely to recur – and, mitigating factor nine – that "[t]he character and attitude of the defendant [which] indicate that he is unlikely to commit another offense." N.J. Stat. Ann. § 2C:44–1(b). Although Ms. Osorio, of course, would have preferred for counsel to have succeeded in obtaining a

---

[4] I note that the prosecutor informed the sentencing court that the State "didn't ask for the maximum term." (DE 5-14 at 8.) Rather, the prosecutor, in consideration of Ms. Osorio's psychiatric history, recommended that Ms. Osorio receive twenty (20) years imprisonment with a ten (10) year period of parole ineligibility, as opposed to the maximum of term of thirty (30) years imprisonment. (*Id.*)

sentence lower than the once she received, the record belies her assertion that trial counsel failed to argue for a lower sentence or to invoke mitigating factors. (DE 5-14 at 4.) Indeed, counsel made the very arguments Ms. Osorio now contends that he should have made -- *i.e.*, arguments for imposition of a shorter sentence based upon mitigating factors. She merely asserts, rather vaguely, that counsel was not "forceful" enough.

Moreover, Ms. Osorio has also not demonstrated a reasonable probability that her sentence would have been more lenient but for counsel's failure to make any particular argument beyond those that he did, in fact, make at sentencing. The sentencing court expressly reduced Ms. Osorio's sentence based upon her mental and physical conditions and gave her the benefit of the doubt[5] as to certain mitigating factors. She was sentenced to twenty years in prison, rather than the thirty that were possible for the six crimes of which she was convicted. (*See* DE 5-14 at 8 and 10-11.) Ms. Osorio has not demonstrated, or even really alleged, reason to believe that an argument for a lower sentence would have succeeded.

For these reasons, the state courts reasonably could have determined that Ms. Osorio did not establish the prejudice prong of *Strickland*. Accordingly, Ms. Osorio is not entitled to habeas relief on this claim.

### E. Cumulative Error

In her fifth and final ground for relief, Ms. Osorio argues that "the cumulative effect of the errors complained of rendered [her] trial unfair." (DE 1, at 11-12.) Ms. Osorio submits that

---

[5] The judge found five aggravating factors, and gave Ms. Osorio "the benefit of the doubt" as to a medical-condition mitigating factor. (DE 5-14 at 11; DE 5-2 at 142.) Specifically, the sentencing judge stated that he had taken into account her mental condition, her prior offense history, her health status, and the seriousness of her crimes. (DE 5-14 at 10-11.) The judge also "[went] along with the sentencing recommendation of the State with regard to this matter being concurrent rather than consecutive." (*Id.* at 11.)

even if each claim does not individually warrant habeas relief, her claims, when viewed together, do warrant relief. (*Id.*)

The PCR court did not address Ms. Osorio's claim of cumulative error in its written decision. (DE 5-2, at 129, 139-45.) Because Ms. Osorio did not raise this claim on direct appeal, it is likely that the state court would have regarded this, like the other claims, as procedurally defaulted. (*Id.* at 1-49.) Nevertheless, a habeas court can if appropriate deny a petitioner's unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728. Accordingly, I will exercise my discretion to address Ms. Osorio's claim of cumulative error on the merits.

In order to constitute redressable "cumulative error," the deficiencies in a case must overall have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (internal quotations and citations omitted).

I cannot find any such substantial and injurious effect. Cumulative error presupposes error. I have already found that none of Ms. Osorio's individual claims merit relief, and indeed I have found that they lack substance. Added together, they do no better; Ms. Osorio has failed to show that there was any error which casts doubt on the proofs of her guilt which were presented at trial. Given the weakness of each of Ms. Osorio's grounds for relief, her failure to demonstrate actual prejudice from any of the deficiencies she alleges, as well as the ample independent

evidence of guilt, Ms. Osorio has not demonstrated that the alleged cumulative error in her case had a substantial and injurious effect or influence in determining the jury's verdict. As a result, Ms. Osorio is not entitled to habeas relief on grounds of cumulative error.

## V.     **CERTIFICATE OF APPEABILITY**

A petitioner may not appeal from a final order in a habeas proceeding where the petitioner's detention arises out of his state court conviction unless she has "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). I find that none of the claims raised in Ms. Osorio's § 2254 petition meet that standard, and I will accordingly decline to issue a certificate of appealability.

## VI.    **CONCLUSION**

For all of the foregoing reasons, Ms. Osorio's § 2254 petition is denied and a certificate of appealability shall not issue. An appropriate Order is filed with this opinion.

DATED: January 14, 2020

KEVIN MCNULTY
United States District Judge

24